Peter R. CASTELLANO, et al.,
Plaintiffs–Appellants,

v.

BOARD OF TRUSTEES OF the POLICE OFFICERS' VARIABLE SUPPLEMENTS FUND, Board of Trustees of the Police Supervisor Officers' Supplements Fund, Harrison J. Goldin, and the City of New York, Defendants–Appellees.

No. 1029, Docket 90–7950.

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1991.

Decided June 25, 1991.

Ronald Podolsky, New York City, for plaintiffs-appellants.

Timothy J. O'Shaughnessy, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, Fay Leoussis, of counsel), for defendants-appellees.

Before KEARSE, PRATT, and McLAUGHLIN, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Under the New York City Administrative Code, members of the police force may retire for numerous reasons. A member may retire for "ordinary disability", meaning that "such member is physically or mentally incapacitated for the performance of duty and ought to be retired." N.Y.C. Admin.Code § 13–251 (1988). Similarly, a member may retire for "accident disability", which means that his physical or mental incapacitation is "as a natural and proximate result of" service in the police force. *Id.*, § 13–252. A member may also retire without a physical disability. If the member has 15 years of police service, but less than 20, he may retire with a deferred vested pension benefit, payment of which is to begin at a later date. *Id.*, § 13–256. Finally, if a member has served 20 years in the force, and does not retire under a disability, he may retire "for service". *Id.*, §§ 13–246, 13–247.

The reason a member retires has important ramifications for his retirement income, not the least of which is the fact that only "for service" retirees receive "variable supplements", which do "not constitut[e] a pension or retirement allowance", *see* N.Y.C.Admin.Code §§ 13–269(b), 13–279(b) (added by N.Y.Laws ch. 876, § 1), but are instead supplemental monies paid in addition to pension benefits. None of the plaintiffs, who are all retired members of the police force, retired "for service". It is undisputed that they are receiving the pensions to which they are entitled, but they claim an entitlement to the variable supplemental payments as well. They mount four constitutional challenges, both state and federal, to the statutes which create and define the variable supplements funds in a way that excludes them from the benefits of the funds.

## BACKGROUND

Because this is an appeal from a motion to dismiss for failure to state a legally-cognizable claim, we assume the truth of the material facts alleged in the complaint; we also take judicial notice of all pertinent statutory material. Plaintiffs, retired members of the New York City Police Department, all retired after 1968. Some retired under ordinary disability, others under accident (service-connected) disability; still others retired under a deferred vested pension benefit provision.

Defendant Board of Trustees of the *Police Officers'* Variable Supplements Fund is a statutory entity which administers the Police Officers' Variable Supplements Fund. Defendant Board of Trustees of the *Police Superior Officers'* Variable Supplements Fund is a statutory entity which administers the Police Superior Officers' Variable Supplements Fund. Defendant Harrison J. Goldin is comptroller of the City of New York, a member of both aforementioned boards of trustees, and the custodian of the assets of each Variable Supplements Fund ("VSF"). The City of New York ("city") is a municipal corporation of the State of New York. On this appeal, the defendants are not distinguished, for they all share a common interest.

In 1968, then-Mayor of New York John V. Lindsay appointed a special panel to assist in contract negotiations between the city and the unions representing police, firefighters, and sanitation workers. The panel was chaired by retired Supreme Court Justice Arthur J. Goldberg. One of the recommendations of the Goldberg panel, the one at issue in this case, was to create "Supplemental Pension Funds" (now known as VSFs). The Goldberg panel's recommendation was adopted verbatim into the collective bargaining agreement between the Patrolmen's Benevolent Association and the city. This provision reads, in pertinent part:

> The City and the Association agree to cause to be paid over to a separate fund, established within the present Police Pension Fund, the proceeds of the annual yield and capital appreciation, realized or unrealized, earned by reason of an investment in equities in excess of the yield which would have resulted from investments such as bonds, mortgages, and other fixed income securities. The purpose of this fund shall be to provide a supplemental benefit on a variable annuity basis, for Articles I and II, as determined by the trustees. The fund shall be jointly administered by two trustees, who shall be the Mayor or his representative on the Police Pension Board and the Association designee on such Board. Deadlocks between the two trustees shall be resolved by arbitration by (arbitrator to be selected); or if he fails or is unable to serve, by the arbitration provisions of this Collective Bargaining agreement.

Because this provision contemplated alteration of pension funds and their benefits, legislative approval was required before the collective bargaining agreement could be implemented. Pursuant to a "home rule" request by the city, the legislature passed a series of laws, which, *inter alia*, amended the city's administrative code and implemented the collective bargaining agreement.

As implemented, the VSFs are funded by a formula, which provides that when a pension fund's earnings from investments in equities surpass what they would have been, hypothetically, had the investments been placed in fixed income obligations, the windfall is allocated to the two VSFs. *See* N.Y.C.Admin.Code § 13–232. If the earnings from investments in equities are less than the hypothetical earnings from fixed-income obligations, no funds are transferred to the VSFs.

The implementing statute, 1970 N.Y. Laws ch. 876, gave each of the boards of trustees discretion to authorize payments from the VSFs to pension fund beneficiaries, and broad discretion as to the form of the payments, the amounts of the payments, and the cases in which payments would be made. The trustees' discretion regarding the payments is circumscribed by considerations of "equity, fairness, and principles of prudent management." *Id.*

However, chapter 876 also makes clear that the VSFs "shall not be, and shall not

be construed to constitute, a pension or retirement system or fund", and the payments from the VSFs do not constitute "a pension or retirement allowance." N.Y.C. Admin.Code §§ 13–269(b), 13–279(b). The legislature further confined the benefits of the VSFs to "for service" retirees, thereby excluding the plaintiffs, all non-"for service" retirees, from the benefits of the VSFs.

The plaintiffs filed this action in the district court, claiming that because they do not receive variable supplements, their rights under the United States Constitution's equal protection clause, due process clause, and contract clause are being violated. The plaintiffs also alleged that the VSFs, as presently implemented, violate N.Y. Const. art. V, § 7.

The defendants moved to dismiss the complaint for failure to state a legally-cognizable claim pursuant to Fed.R.Civ.P. 12(b)(6), and the district court agreed. In an "endorsement" reported at 752 F.Supp. 98 (S.D.N.Y.1990), Judge Duffy held that the "for service" classification "was a legitimate attempt to equalize benefits among the various classifications of retired members", thereby providing "a plausible and rational basis for the classification of VSF payments," and passing muster under the equal protection clause. *Id.* at 101. He also held that since the receipt of VSF payments was not an integral part of the pension fund contract, there was no violation of the contract clause. *Id.* at 102. Judge Duffy further held that since the plaintiffs' contributions did not entitle them to the investment earnings of the VSFs, there was no protected property interest in the benefits. *Id.* at 100. Since no federal issues survived dismissal, Judge Duffy exercised his discretion to dismiss the pendent state constitutional claim as well. *Id.* at 102.

The plaintiffs renew their arguments on appeal.

## DISCUSSION

### A. *Equal Protection*

 The plaintiffs claim that the statutory scheme, authorizing payments to "for service" retirees, while denying payments to those police officers who retired under other circumstances, violates the equal protection clause. It is well-settled that when a state classifies groups based upon non-suspect criteria, and the classification does not involve a "fundamental right", that classification violates the equal protection clause only if it has no "reasonable" or "rational" basis. *See, e.g., Exxon Corp. v. Eagerton,* 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983); *Texaco, Inc. v. Short,* 454 U.S. 516, 539 & n. 36, 102 S.Ct. 781, 797, & n. 36, 70 L.Ed.2d 738 (1982); *Western & Southern Life Insurance Co. v. State Bd. of Equalization,* 451 U.S. 648, 672, 101 S.Ct. 2070, 2085, 68 L.Ed.2d 514 (1981); *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981); *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). Plaintiffs and defendants both agree that the "reasonable basis" standard is the applicable standard against which to test the legislation at issue.

The definition of "for service" contributes to the present conflict. The statutory scheme gives the trustees discretion to authorize payments from the VSFs to "pension fund beneficiaries". N.Y.C.Admin. Code §§ 13–271(a)(1), 13–281(a). A "pension fund beneficiary" is a police officer retired "for service". *Id.,* § 13–268(5). Under this scheme, for example, a 22–year veteran of the police force—who retires "on disability" from a "line-of-duty" heart attack—is not allowed to benefit from the VSFs, even though he could have retired

**756**

"for service" after 20 years of service. *See Application of Ryan*, 525 N.Y.S.2d 487, 487–88, 138 Misc.2d 826, 826–27 (1988), *aff'd*, 151 A.D.2d 1055, 546 N.Y.S.2d 504 (1st Dep't) (mem.), *appeal dismissed*, 74 N.Y.2d 944, 549 N.E.2d 479, 550 N.Y.S.2d 277 (1989). Plaintiffs claim that this sort of inconsistency proves the statutory scheme to be "wholly irrelevant to the achievement of a valid state objective" and lacking a "fair and substantial relation to the object for which the Variable Supplements Funds were enacted." *See* Complaint at ¶ 15.

We disagree. As was pointed out in *Application of Ryan*, although there are exceptions, disability retirees *generally* work for shorter periods of time than "for service" retirees, and therefore make lower total contributions to the pension funds. *Id.*, 525 N.Y.S.2d at 488, 138 Misc.2d at 827. Additionally, the pensions of accident disability retirees equal three-fourths of their annual compensation at retirement (an amount not subject to federal income tax, *see* 26 U.S.C. § 104(a)(1)); they also receive an annuity. N.Y.C.Admin.Code § 13–258. Their compatriots who retire "for service", on the other hand, receive a retirement allowance of a pension (which *is* subject to the federal income tax laws) plus one annuity which, when added together, equals one-half of their annual compensation at retirement. *Id.*, § 13–255(1).

In allowing VSF payments only to "for service" retirees, the city struck a balance between "for service" and other retirees. If the city had not struck such a balance, and allowed VSF payments across the board, disability retirement might be too favorable an option, one which might encourage members of the force to seek classification as "disabled" in order to receive higher retirement benefits. Similarly, granting VSF benefits to "for service" retirees, while refusing those benefits to early retirees, serves the legitimate governmental interest of discouraging experienced members of the police force from seeking early retirement. Given these considerations, and since "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it," *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the district court was correct in refusing to set aside the VSF plan.

Although there may be better ways to draft the statutory scheme, we conclude that the scheme at issue bears a reasonable relationship to the legitimate governmental interests of reducing the disparity of retirement benefits among classes of retirees, and encouraging continued service of experienced officers. Even though not blessed with mathematical perfection or perfect equality, the scheme is reasonable enough:

> The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment; and such judgment cannot be pronounced of the ordinance in controversy.

*Metropolis Theater Co. v. Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). *Compare Poggi v. City of New York*, 109 A.D.2d 265, 273–75, 491 N.Y.S.2d 331, 338–39 (1st Dep't 1985) (formula allocating transfers between the Police Superior Officers' VSF and Patrolmen's VSF could rationally be based on differences between patrolmen's and superior officers' service retirement allowances), *aff'd*, 67 N.Y.2d 794, 492 N.E.2d 397, 501 N.Y.S.2d 324 (1986).

■ Plaintiffs do advance, however, an interesting argument. They point out that the legislation at issue, which was passed pursuant to a "home rule" request by the city, had a singular purpose: implementing the collective bargaining agreement. The "reasonableness" of the legislation, therefore, must be tested not to determine whether "any state of facts" justifies the legislation, but *only* to determine whether the particular terms of the collective bargaining agreement justify the legislation.

According to the plaintiffs, since the only governmental interest at issue was the implementation of a collective bargaining agreement, the test to be applied to the legislation under the equal protection clause is to determine whether it bears a reasonable relationship to *that* governmental interest.

Although ingenious, this argument has a serious flaw, for it seems to rest on an untenable view of the lawmaking process. According to the plaintiffs, the legislature could do nothing more than implement the collective bargaining agreement in accordance with the home rule request. We are not satisfied that the legislature's hands were so tied. *See* N.Y. Const. art. IX, § 2(b)(3):

> [T]he legislature * * * [s]hall have the power to confer on local governments powers not relating to their property, affairs or governments including but not limited to those of local legislation and administration, in addition to those otherwise granted by or pursuant to this article, *and to withdraw or restrict such additional powers.*

(emphasis added). The legislature not only implemented the collective bargaining agreement, but it also set restrictions on the payment of VSF benefits, a point on which the collective bargaining agreement was conspicuously silent. Both implementation and restriction were within the power of the legislature.

Because the legislature's judgment was rationally related to legitimate governmental objectives, the statutory scheme does not violate the equal protection clause.

### B. *Contract Clause*

■ Plaintiffs' second attack on the validity of the VSF scheme arises out of the contract clause of U.S. Const. art. I, § 10, which prohibits states from passing any "Law impairing the Obligation of Contracts". The plaintiffs contend that the provisions of both chapter 876 and the pertinent sections of the New York City Administrative Code impair the obligations of the collective bargaining agreement, since those provisions exclude them from the VSF payments made available to "for service" retirees, an exclusion contained in neither the Goldberg panel report nor the collective bargaining agreement itself.

We disagree. The collective bargaining agreement, which follows the language of the Goldberg panel report, merely sets up a "supplemental pension fund" that has as its purpose "to provide a supplemental benefit on a variable annuity basis * * *, as determined by the trustees." It says nothing about who may be beneficiaries. Simply because the agreement is silent as to which members will receive VSF payments, it does not follow from this silence that *all* pensioners are contractually entitled to such payments. The administrative code, on the other hand, speaks to the matter clearly: "[W]here the statute speaks with clarity, the statute is the only safe guide through the arcane area of public employees' pension rights." *Di Giacomo v. City of New York*, 58 A.D.2d 347, 362, 397 N.Y. S.2d 632, 642 (1977) (Silverman, J., dissenting in part), *rev'd*, 46 N.Y.2d 894, 387 N.E.2d 622, 414 N.Y.S.2d 690 (1979) (based on Justice Silverman's dissenting opinion). In short, the collective bargaining agreement created a fund; it did not establish the beneficiaries of that fund. The beneficiaries were determined by the legislature in its implementing statute.

The threshold inquiry in any contract clause analysis is the severity of the impairment of the contractual relationship. "The severity of the impairment measures the height of the hurdle the state legislation must clear," *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 98 S.Ct. 2716, 2723, 57 L.Ed.2d 727 (1978); since we find absolutely no impairment of the city's obligations under the collective bargaining agreement, there is no contract clause "hurdle" to leap, and our inquiry ends. The district court properly dismissed the contract clause claim under Fed.R. Civ.P. 12(b)(6).

### C. *Due Process*

■ As a third attack on the constitutionality of the VSF statutory scheme, the plaintiffs allege that the scheme deprives

them of a property right without due process of law. We need not pause long to dispose of this contention, for plaintiffs fail to establish that they have any property right to the VSF benefits. In *Crown v. Trustees of the Patrolmen's Variable Supplements Fund*, 819 F.2d 47 (2d Cir. 1987) (per curiam), we affirmed the district court's rule 12(b)(6) dismissal of a similar property right claim substantially for the reasons that had been developed in the district court's opinion, an excerpt from which is worth repeating here:

> While there is no question that plaintiffs have an entitlement under New York law to receive their pension payments—which they are receiving—they have no entitlement to, or right to direct the retention of, the particular assets that are held for investment purposes in the pension fund. * * *. The New York courts have specifically analyzed this issue in the context of the Pension Fund and concluded that, "except to the extent that [the Pension Fund] is required to pay interest on members' accumulated contributions * * *, the Pension Fund is not required * * * to pay investment earnings [VSFs] to its members * * *. Thus, investment earnings are not a statutory component of Pension Fund benefits." *Poggi v. City of New York*, 109 A.D.2d 265, 491 N.Y.S.2d 331, 336 (1st Dep't 1985), *aff'd mem. on other grounds*, 67 N.Y.2d 794, 492 N.E.2d 397, 501 N.Y.S.2d 324 (1986).

*Crown v. Trustees of the Patrolmen's Variable Supplements Fund*, 659 F.Supp. 318, 320 (S.D.N.Y.) (citation omitted), *aff'd*, 819 F.2d 47 (2d Cir.1987) (per curiam). Since, under New York law, the plaintiffs have no "legitimate claim of entitlement" to the VSFs, *see Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), there is no protectable property interest, and the fourteenth amendment's due process guarantee does not attach.

D. *The State Constitutional Claim*

■ The final claim pressed by the plaintiffs would require us to interpret the Constitution of the State of New York. Plain-

tiffs cite *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in support of their argument that the district court should not have dismissed the pendent state law claim. We agree that *Gibbs* controls, but disagree that it leads to the conclusion that the pendent state claim should have survived dismissal. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* at 726, 86 S.Ct. at 1139.

Since the district court dismissed the federal claims, and we have affirmed, there remains no independent basis for federal jurisdiction: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. *See also* 28 U.S.C. § 1367(c)(3) (effective Dec. 1, 1990) (codifying existing caselaw and giving district courts discretion to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction").

Our concern with comity between the federal and state courts also supports this conclusion. In *Poggi v. City of New York*, 67 N.Y.2d 794, 492 N.E.2d 397, 501 N.Y.S.2d 324 (1986), a case also involving VSFs, the New York Court of Appeals summarily affirmed an order of the Appellate Division, but noted: "[W]e do not reach the question whether the variable supplements funds constitute a pension or retirement benefit," as the Appellate Division had in declining to accord the plaintiffs relief under N.Y. Const. art. V, § 7. *Poggi*, 67 N.Y.2d at 794, 492 N.E.2d at 397, 501 N.Y.S.2d at 324. It would be, at the very least, imprudent for us to determine a state constitutional claim of first impression. *Compare* 28 U.S.C. § 1367(c)(1) (granting district courts discretion to decline the exercise of supplemental jurisdiction where "the claim raises a novel or complex issue of State law"). We therefore affirm the

dismissal of the pendent state constitutional claim.

## CONCLUSION

The judgment of the district court, dismissing the plaintiffs' federal claims for failure to state a legally-cognizable claim, and their state claim for lack of pendent jurisdiction, is affirmed.