**Frank BLACK as President of Tenants for Equality in Housing and Skip Lavis, Plaintiffs,**

v.

**The STATE OF NEW YORK, George M. Pataki, Governor of the State of New York, Peter F. Vallone, as Speaker and Majority Leader of the New York City Council, and the New York City Council, Defendants.**

**No. 97 Civ. 3415(MGC).**

United States District Court, S.D. New York.

July 21, 1998.

Frank Black, Skip Lavis, New York City, pro se.

Dennis C. Vacco, Attorney General of the State of New York, New York City by Evan A. Gordon, Assistant Attorney General, for State of New York, George M. Pataki.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City by Tahirih Sadrieh, Assistant Corporation Counsel, for Frank Black, Skip Lavis.

## OPINION

CEDARBAUM, Senior District Judge.

This is an action challenging state and local laws that regulate certain apartment rental rates in New York City. Plaintiffs contend that the challenged laws violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

1. The Rent Control and Rent Stabilization Laws

The New York State Legislature enacted the Emergency Housing Rent Control Law in 1946 to address a "serious public emergency" created by "an acute shortage in dwellings," which resulted in "speculative, unwarranted and abnormal increases in rents." 1946 N.Y.Laws ch. 274 (codified, as amended, at N.Y.Uncons.Laws § 8581–8597). These measures were designed to regulate and control the housing market so as to "prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health ... [and] to prevent uncertainty, hardship and dislocation." *Id.; see also Braschi v. Stahl Assocs. Co.,* 74 N.Y.2d 201, 208, 544 N.Y.S.2d 784, 787, 543 N.E.2d 49 (1989). Although initially designed as an emergency measure to alleviate the housing shortage at the end of the Second World War, "the Legislature has found it necessary to continually reenact the rent-control laws, thereby providing continuous protection to tenants." *Braschi,* 74 N.Y.2d at 208–09, 544 N.Y.S.2d at 787, 543 N.E.2d 49. Thus, rent control regulations have repeatedly been extended and are in effect

today for certain apartments in New York City.

In 1962, the New York State Legislature passed the Local Emergency Housing Rent Control Act ("LEHRA"), which transferred governance of rent control of residential accommodations in New York City from the state to the city. 1962 N.Y.Laws ch. 21 (codified, as amended, at N.Y.Uncons.Laws §§ 8601–8617). Subsequently, the New York City Council declared a public emergency in housing and passed the New York City Rent and Rehabilitation Law, Local L.1962, No. 20 (codified at N.Y.C.Admin.Code §§ Y51–1.0 to Y51–18.0) (now N.Y.C.Admin.Code §§ 26–401 to 26–415) (the "Rent Control Law"), which strictly regulates the rates that may be charged for certain housing accommodations in New York City.

In 1969, the City Council, citing "a serious public emergency" in housing, enacted the Rent Stabilization Law of 1969. N.Y. City Local L.1969, No. 16 (codified at N.Y.C.Admin.Code §§ YY51–1.0 to YY51–8.0) (now N.Y.C.Admin.Code §§ 26–501 to 26–520) (the "Rent Stabilization Law"). The Rent Stabilization Law regulates rent increases that can be charged by owners of many rental housing accommodations in New York City that were not already governed by rent control, including buildings constructed after February 1, 1947 containing six or more dwelling units. Rent Stabilization Law §§ 26–504 to 26–509.

The LEHRA was later amended to implement "vacancy decontrol," which automatically makes rent controlled units subject to the less rigorous provisions of rent stabilization upon the termination of a rent-controlled tenancy. *See* N.Y.Unconsol.Laws § 8605; 9 N.Y.C.R.R. §§ 2520.11(a), 2521.1(a)(1); *see also Braschi*, 74 N.Y.2d at 209, 544 N.Y.S.2d at 787, 543 N.E.2d 49. The Rent Control

Law, however, historically has protected certain persons from eviction or sudden rent increases upon the death of the tenant of record. The rent control statutes accorded protection against eviction to a "tenant" after expiration of the original tenancy. *See* N.Y.Uncons.Laws § 8585(1) (Emergency Housing Rent Control Law § 5(1) (1946)); N.Y. City Admin.Code § 26–408(a) (formerly § Y51–6.0 (1962)). In the event of a tenant's death, the rent control regulations also prohibited eviction of the surviving spouse or a family member who had been living with the tenant. *See* 9 N.Y.C.R.R. §§ 2104.6(d), 2204.6(d). That protection was later extended to family members living with a tenant who voluntarily vacated the apartment. *See Herzog v. Joy*, 74 A.D.2d 372, 428 N.Y.S.2d 1 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 821, 439 N.Y.S.2d 922, 422 N.E.2d 582 (1981).

Under the Rent Stabilization Law, in contrast to rent control, only the tenant of record originally was entitled to a renewal lease. *See Sullivan v. Brevard Assocs.*, 66 N.Y.2d 489, 493, 498 N.Y.S.2d 96, 98, 488 N.E.2d 1208 (1985). In 1987, the New York State Division of Housing and Community Renewal ("DHCR") [1] amended the rent stabilization regulations to provide protection against eviction to "family member[s]," a term defined to include 24 specified blood or marriage relationships. *See* 9 N.Y.C.R.R. § 2520.6(o) (1987). When the tenant of record died, family members who had resided in the unit for at least two years (one year if the tenant was elderly or disabled) were entitled to succeed to the tenancy. When the tenant of record voluntarily vacated an apartment, family members who had resided in the apartment from the inception of the tenancy or commencement of the relationship were entitled to succeed to the tenancy. *See* 9 N.Y.C.R.R. § 2523.5(b) (1987).[2]

1. In 1983, the Legislature designated the New York State Division of Housing and Community Renewal "the sole administrative agency to administer the regulation of residential rents" under the rent control and rent stabilization statutes (Omnibus Housing Act, 1983 N .Y.Laws ch. 403, § 3), and in 1985 additionally granted DHCR authority to amend the Rent Stabilization Code (a body of regulations previously administered by a private association of property owners), 1985 N.Y.Laws ch. 888, § 2; *see also Rent*

*Stabilization Ass'n of New York City, Inc. v. Higgins*, 83 N.Y.2d 156, 164–168, 608 N.Y.S.2d 930, 932–934, 630 N.E.2d 626 (1993), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 823 (1994).

2. In 1989, DHCR issued regulations that extended protection against eviction to qualified family members of a tenant of record in all rent-regulated housing where the tenant vacated the unit. *See* 9 N.Y.C.R.R. §§ 2204.6(d)(3)(i), 2500.2(n),

### 2. Allegations of the Complaint

█ The complaint sets out the following facts which, for purposes of this motion to dismiss, must be accepted as true. Plaintiffs Frank Black and Skip Lavis are New York City residents who occupy rental housing accommodations that are not subject to rent regulations.[3] According to the complaint, "free market housing accommodations"—that is, rental units that are covered by neither the Rent Control Law nor the Rent Stabilization Law—comprise about 40% of the rental units in New York City. These unregulated units are leased by persons "not lucky enough to have the ability" to lease rent-controlled or rent-stabilized accommodations. The rents charged for free market housing accommodations "are uniformly dramatically higher than both rent controlled rents and rent stabilized rents of comparable apartments, located in the same county, city, neighborhood, building and often on the same floor."

Plaintiffs have been unable to locate and lease rent regulated housing accommodations at rates below fair market value because the majority of such regulated apartments are occupied by "select" tenants and their successors in interest.

According to the complaint, plaintiffs take the position that the Rent Stabilization Law and Rent Control Law are "fair and equitable, with the sole exception of those provisions of the law which enable rent regulated leases to be held in perpetuity by rent regulated tenants and their successors in interest." These provisions, plaintiffs contend, "eliminate[ ] and exclude[ ] all others from the opportunity to enjoy the use and benefit

from government regulated fair market value housing accommodations" and amount to a denial of equal protection in violation of the Fourteenth Amendment.

Defendants do not seek a declaration that the New York City rent regulation laws are unconstitutional. Rather, they seek an order directing defendants to amend those laws to provide that, among other things, regulated rents not be enjoyed by any particular person for more than ten years, and that regulated apartments be distributed through a "lottery system."

## DISCUSSION

In deciding defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of plaintiffs, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A motion to dismiss should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts that would entitle them to relief. *Id.* Moreover, when a party proceeds pro se, the papers should be read liberally and "interpret[ed] ... to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (citation and internal quotation marks omitted); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (pro se complaints held to less stringent standards than pleadings drafted by lawyers).

---

2520.6(*o*)(2). The regulations enlarged the definition of "family member," beyond blood or marriage, to include "[a]ny other person residing with the tenant ... who can prove emotional and financial commitment, and interdependence between such person and the tenant or permanent tenant." The regulations prescribe certain factors "to be considered in determining whether such emotional and financial commitment and interdependence existed."

**3.** Plaintiff Black purports to bring this action "as President of Tenants for Equality in Housing." The complaint, however, does not explain what type of organization "Tenants for Equality in Housing" is, or what its membership, if any,

consists of. In any event, Black, who is not an attorney, cannot represent any person other than himself in this action. *See Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20, 22 (2d Cir.1983) (corporation cannot appear pro se); *Church of the New Testament v. United States,* 783 F.2d 771, 773–74 (9th Cir.1986) (unincorporated association cannot appear pro se); *MOVE Org. v. Department of Justice,* 555 F.Supp. 684, 692–93 (E.D.Pa.1983) (same); *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1309–10 (2d Cir.1991) (non-lawyer cannot appear on behalf of partnership). Accordingly, this action will be treated as one by individual plaintiffs Black and Lavis, both of whom have appeared pro se.

■ The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying any person within its jurisdiction the equal protection of the laws. A statute that neither impinges on a fundamental right guaranteed by the Constitution nor uses a classification based on a suspect criterion such as race, nationality, alienage or gender will not be found to violate the Equal Protection Clause as long as it bears a rational relationship to a legitimate governmental purpose. *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983); *Story v. Green*, 978 F.2d 60, 63–64 (2d Cir.1992). When the rational relationship standard is applied under the Equal Protection Clause, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 756 (2d Cir.) (quoting *McGowan*), *cert. denied*, 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

■ The rational relationship standard is the appropriate standard for testing the validity under the Equal Protection Clause of laws regulating housing rental rates. *Sidberry v. Koch*, 539 F.Supp. 413, 419 (S.D.N.Y. 1982) ("[h]ousing is not a fundamental right, and classifications affecting housing are subject only to the 'rational relationship' test"); *see also Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (applying rational relationship standard to statute that provided for speedy resolution of eviction proceedings). Under that standard of review, the rent regulation laws do not deny equal protection.

■ The only aspect of the rent regulation laws that plaintiffs challenge is that which provides for certain rights of succession with respect to regulated leases. The successorship provisions bear a rational relationship to a legitimate government interest. As set out above, the rent regulation laws generally were enacted to "prevent exactions of unjust, unreasonable and oppressive rents." And, as the New York Court of Appeals explained in a case involving the successorship provision of the Rent Control Law:

> The manifest intent of this section is to restrict the landowner's ability to evict a narrow class of occupants other than the tenant of record.... The noneviction provision does not concern succession to real property but rather is a means of protecting a certain class of occupants from the sudden loss of their homes.

*Braschi*, 74 N.Y.2d at 209–210, 544 N.Y.S.2d at 787–788, 543 N.E.2d 49. The same explanation applies to the successorship provisions of the Rent Stabilization Law. This goal— prevention of the loss of housing by apartment inhabitants upon the death of the tenant of record—is a legitimate goal of the state and city legislatures. Moreover, it cannot be said that the successorship provisions of the rent regulation laws are not rationally related to the achievement of that goal. *Cf. Pennell v. City of San Jose*, 485 U.S. 1, 14, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (provision of rent control law setting out "hardship" to tenant as a factor in rent increase determinations was designed to serve legitimate interest of protecting tenants, and it was not irrational to treat certain landlords differently on the basis of whether they have "hardship" tenants). It is not irrational to extend to certain persons sharing an apartment with the tenant of record the same protection that the rent regulation laws provide to the tenant of record. It also is not irrational to extend such protection by permitting a person who shares an apartment to succeed to the rights of the tenant of record. As the Supreme Court has noted:

> The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment; and such judgment cannot be pronounced of the ordinance in controversy.

*Metropolis Theater Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730 (1913) (quoted with approval by *Castellano,* 937 F.2d at 756).

## CONCLUSION

For the foregoing reasons, the complaint fails to state a claim upon which relief can be granted. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

SO ORDERED.