**In re Celeste GRIFFIN, Debtor.**

**Celeste GRIFFIN, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Bankruptcy No. 85–03261–2.
Adv. No. 89–4260–2.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 29, 1989.

Maurice B. Soltz, Soltz & Shankland, Kansas City, Mo., for plaintiff.

Kenneth E. Weinfurt, U.S. Dept. of Justice, Kansas City, Mo., for defendant.

---

1. Defendant's Response to Debtor Plaintiff's First Set of Interrogatories to the Defendant,

**ORDER**

ARTHUR B. FEDERMAN,
Bankruptcy Judge.

The matter before the Court is the complaint filed by Celeste Griffin ("Griffin") against the United States of America ("USA"), seeking: 1) the turnover of funds garnished by the USA; 2) a determination that the USA violated the provisions of 11 U.S.C. §§ 362 and 524; and 3) damages, punitive damages, attorneys fees and costs. After due notice, a hearing was convened on December 20, 1989, at which time counsel for the parties appeared and argument was made. Pursuant to the representations of counsel, the facts in this adversary proceeding are essentially undisputed. This Order shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052.

FINDINGS OF FACT

On or about November 6, 1974, Griffin executed a promissory note in favor of American National Bank of St. Joseph, Missouri, which was in turn insured by ·the United States Department of Education ("Department of Education"), as a means of financing her education (the "Student Loan"). Subsequently, the school attended by Griffin went out of business and Griffin apparently did not enroll at any other institution. Due to Griffin's lack of enrollment, the Student Loan came due within nine months after the date which she last attended school. Griffin did not make payments on her student loan when it became due; as the result of her default in payment, the holder of the note accelerated the principal balance owing on the note and demanded payment in full; being unable to collect the same, the holder assigned the note to the Department of Education, all of which occurred sometime in November 1975, or shortly thereafter. Although there is a lack of certainty regarding the dates of default, acceleration, and assignment, the USA admitted that the Student Loan first came due and owing no later than July 20, 1978.[1]

Answer to Interrogatory # 3.

In May, 1985, a collection action against Griffin, Civil Case No. 85–0419–CV–W–9, was begun by the USA in the United States District Court for the Western District of Missouri (the "Collection Action"). Prior to the entry of judgment in that action, on September 16, 1985, Griffin filed her Chapter 13 petition in the United States Bankruptcy Court for the Western District of Missouri. The Department of Education was not listed as a creditor in Griffin's schedule of creditors filed with her Chapter 13 petition.

Griffin's Chapter 13 Plan was confirmed by the Bankruptcy Court on November 25, 1985. On January 2, 1986, a Judgment by Stipulation was entered in the Collection Action, despite the filing of the Chapter 13 petition and confirmation of Griffin's Chapter 13 Plan; Griffin's bankruptcy counsel was not advised of the Collection Action nor of the entry of this judgment. In satisfaction of this judgment, Debtor made some payments to the Department of Education outside the payments being made under the confirmed Chapter 13 Plan.

On August 10, 1988, Griffin's Chapter 13 case was dismissed for failure to make plan payments; it was reinstated and converted to a Chapter 7 case on September 26, 1988. As a result of the conversion to Chapter 7, Griffin filed a new schedule of liabilities, in which the Department of Education was for the first time listed as a creditor. The USA had instituted a garnishment action upon Griffin in the United States District Court for the Western District of Missouri on September 1, 1988; upon being informed of the existence of the bankruptcy proceedings, the garnishment was dismissed by the USA on September 9, 1988.

During the administration of her Chapter 7 case, neither Griffin nor the USA filed any type of action to determine the dischargeability of the Student Loan. On January 13, 1989, Griffin was granted her Chapter 7 discharge pursuant to the order of the bankruptcy court. On or about April 7, 1989, the USA caused to be issued a Notice of Garnishment and Summons, seeking to satisfy the judgment arising out of the Collection Action. As a result of that garnishment, Griffin's employer withheld and paid over to the U.S. Marshal the sum of $443.85, who turned over these funds to the USA.

On September 8, 1989, the USA filed a Motion to Revive Lien in the Collection Action, seeking a District Court order reviving the judgment lien pursuant to Missouri law. Despite the fact that the USA was now aware of Griffin's bankruptcy proceeding and of her bankruptcy counsel, this motion was served only upon Griffin. On October 9, 1989, the USA again caused to be issued another Notice of Garnishment and Summons. On October 13, 1989, the District Court issued a show cause order requiring Griffin to respond in writing as to why the judgment lien should not be revived.[2] Griffin filed the above-captioned adversary proceeding on November 6, 1989.

## CONCLUSIONS OF LAW

The matter before the Court is whether the USA violated the automatic stay provisions of 11 U.S.C. § 362 or the permanent *injunction provisions of* 11 U.S.C. § 524. The determination of this question requires the application of the provisions of 11 U.S.C. § 523(a)(8)(A). The Court has jurisdiction over this matter and these parties, and may enter final orders, pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). For the reasons stated below, the Court finds that Griffin's Student Loan was discharged, that the garnishment therefore violated the permanent injunction of Section 524, and that the garnished funds should be returned. Since this appears to be a case of first impression, the Court declines to award Griffin any attorneys fees, expenses, or punitive damages. In the alternative, the Court finds that the Complaint filed by Griffin should be treated as a Complaint to Determine Dischargeability of Debt, and that the involved student loan should be and is discharged effective immediately.

Section 362 stays any action to collect debts or enforce liens against debtors, estate property, or debtors' property during

---

2. Griffin's response, if any, to this Show Cause    Order, was not disclosed to this Court.

the pendency of a bankruptcy case. Section 524 permanently enjoins collection actions as to discharged debts following the entry of the Order of Discharge. In the present matter, Griffin complains that the USA took certain actions to collect discharged debts that violated the injunctive relief granted under Section 524. The USA contends that although it was listed as a creditor in the Chapter 7 case, its debt was not discharged because the Debtor did not take any prior affirmative steps in the Bankruptcy Court to have such debt discharged. Accordingly, in order to rule upon Griffin's complaint, the Court must determine whether the subject debt was dischargeable, and was in effect discharged automatically as a result of the general discharge granted the debtor.

Student loans are generally nondischargeable. 11 U.S.C. § 523(a)(8)(A). However, 11 U.S.C. § 523(a)(8)(A) is a specific exception, which discharges student loans that first came due more than five years prior to the filing of bankruptcy; 11 U.S.C. § 523(a)(8)(B) is another specific exception which allows the discharge of student loans that the Court determines to be an undue hardship on a debtor.[3] In the present adversary matter, Griffin claims that her Student Loan was discharged under Section 523(a)(8)(A); Section 523(a)(8)(B) is not at issue.

It is undisputed that Griffin's Student Loan first became due no later than July 20, 1978, which is more than five years prior to Griffin's original Chapter 13 filing.[4] Under the provisions of Section 523(a)(8)(A), Griffin's Student Loan is the type that could be considered dischargeable. Thus, the issue which the Court must

decide is whether the Student Loan, which first came due more than five years prior to the filing of the original bankruptcy petition, was effectively discharged under Section 523(a)(8)(A) in the absence of judgment rendered as the result of a prior adversary complaint filed by Griffin.

The USA contends that Section 523(a)(8) mandates action by a debtor before a student loan can be discharged. In support, it cites *In re Johnson*, 17 B.R. 95 (Bankr.W. D.Mo.1981). In *Johnson*, the Debtor filed an action asking that her debt be declared to be nondischargeable under Section 523(a)(8)(A) or, in the alternative, that she be granted a hardship discharge under Section 523(a)(8)(B). A question existed as to whether the debt became due and owing before five years prior to the filing of the petition. The Court noted that the legislative history of Section 523(a)(8) provides that it is "self-executing," such that the lender is not required to file a complaint to determine the nondischargeability of any student loan. It then found that almost the entire amount of debt did not become due and owing more than five years prior to the filing, that the hardship exception should not be applied and, therefore, that the student loan was not discharged.

The USA in effect contends that since lenders are not required to file an action to have a student loan declared nondischargeable, all such debts are deemed not to have been discharged in the absence of a Court order to the contrary. This argument fails to recognize the provisions of Section 523(a)(8)(A). The Court agrees with *In re Johnson*, 17 B.R. 95 (Bankr.W.D.Mo.1981) that the provisions of Section 523(a)(8) are self-executing and that the USA need not

---

**3.** 11 U.S.C. § 523:

  (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

  (8) for an educational loan made, insured or guaranteed by a governmental unit or a nonprofit institution, unless—

  (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

  (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

**4.** The USA does not appear to contend that Griffin's Student Loan first came due at the time the judgment was entered in the Collection Action. Due to Griffin's failure to attend school and her default in payment, the entire amount of debt was accelerated and the entire amount first came due and owing no later that July 20, 1978, not at the time that judgment was entered.

file adversary proceedings to determine dischargeability of a student loan *when the date upon which the loan first came due is less than five years prior to the filing of the bankruptcy petition.* The Court further concludes that debtors need not file an adversary proceeding to determine dischargeability of a student loan *when the date upon which the loan first came due is more than five years prior to the filing of the bankruptcy petition.* Thus both the lender and debtor are placed upon equal footing; neither side is required to file a complaint when the statute clearly provides that a student loan is either nondischargeable or dischargeable. In close cases, such as *In re Johnson,* where there is a question of the application of Section 523(a)(8)(A), either of the parties can file a complaint to determine the dischargeability of the student loan.

The Court interprets the use of the term "self-executing" in the legislative history of Section 523(a)(8) as a means of distinguishing the application of Section 523(a)(8) from that of Sections 523(a)(2), 523(a)(4), 523(a)(6), and 523(c). Under these sections, if a creditor wants to have a debt declared nondischargeable for, as an example, fraud or defalcation while acting in a fiduciary capacity, it must file an action in the Bankruptcy Court within a specified time period and meet its burden of showing that such fraud or defalcation did in fact exist. 11 U.S.C. § 523(a)(4); Federal Bankruptcy Rule 4007(c) and (d). Congress did not intend that lenders be required to timely file dischargeability actions under Section 523(a)(8). But that does not mean that such debts are not discharged where, as here, the debt is clearly within the Section 523(a)(8)(A) exception. The USA's interpretation of the self-executing provisions of Sections 523(a)(8) and 523(a)(8)(A) would result in a rule that all debtors would be required to file dischargeability complaints as to clearly dischargeable debts, while the USA would not be required to file complaints for clearly nondischargeable debts. The USA's interpretation would effectively render Sections 523(a)(8) and 523(a)(8)(A) self-executing only for the benefit of the USA. The Court does not read Sections

523(a)(8) and 523(a)(8)(A) as requiring this result and finds no authority for the USA's interpretation.

The Court also finds unpersuasive the USA's argument that a ruling in favor of Griffin would require the USA to file adversary complaints for every student loan debtor prior to obtaining all relevant account information. The provisions of Sections 523(a)(8) and 523(a)(8)(A) are self-executing. Unlike those creditors whose debts may be nondischargeable under Sections 523(a)(2), 523(a)(4), and 523(a)(6), the USA need not file a complaint within the time limits imposed by Federal Bankruptcy Rule 4007(c) and (d). Furthermore, Federal Bankruptcy Rule 4007(b) permits the reopening of closed cases without payment of fees for the purpose of determining dischargeability of debts under any section other than Section 523(c). Thus, the USA has the opportunity to reopen any bankruptcy case at any time in order to file a complaint to determine the dischargeability of a student loan.

Finally, the USA's suggestion that every debtor with a student loan be required to file a dischargeability complaint—even when the loan first came due more than five years prior to the filing of the bankruptcy petition—seems a needless waste of the Court's time and of debtors' time and money. Congress intended Section 523(a)(8)(A) to be self-executing. Only if a question exists as to its application do the parties need to involve the Court.

Therefore, the Court concludes that Griffin's Student Loan was effectively discharged under the provisions of Section 523(a)(8)(A), and that the actions of the USA violated the permanent injunction imposed upon all creditors under Section 524(a). Griffin is awarded judgment and damages in the amount of $443.85, representing those funds which were garnished from her wages by the USA subsequent to her Chapter 7 discharge. Griffin also requested punitive damages, attorneys fees, and expenses as part of her prayer. Given that this case appears to be one of first impression on this particular issue, the Court declines to award any punitive dam-

ages, attorneys fees, or expenses to Griffin. In the alternative, the Court finds that if a Debtor is required to file an action to have student loans declared dischargeable under Section 523(a)(8)(A), that this adversary matter is deemed to be such an action, and that based upon the undisputed facts the subject debt is declared discharged.

IT IS SO ORDERED.