**Denise ODOM, Plaintiff,**

v.

**COLUMBIA UNIVERSITY, et al., Defendants.**

**No. 93 Civ. 8610 (SHS).**

United States District Court, S.D. New York.

Nov. 15, 1995.

Denise Odom, Irvington, NJ, Pro Se.

Brian K. Bernstein, Horowitz Toback & Hyman, New York City, for Columbia University, The Trustees of Columbia University in the City of New York, David Llyveld, Martin Miesal, Frank Wolf, Paul Anderer, Barbara L. Tischler, Patricia Catapano, Marsha Wagner.

Brian K. Bernstein, Horowitz Toback & Hyman, New York City, Boies & McInnis, Bedford, NY, for Paul Anderer.

## OPINION

STEIN, District Judge.

Defendants Columbia University, the Trustees of Columbia University and certain named employees of Columbia University (collectively, "Columbia") have moved to dismiss plaintiff Denise Odom's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In that complaint, Odom alleges the following causes of action: (1) racial discrimination in violation of 42 U.S.C. § 1981; (2) deprivation of her rights pursuant to the Family Education Rights and Privacy Act of 1972 ("FERPA"), 20 U.S.C. § 1232g *et seq.;* (3) violation of the Bank-

ruptcy Code's automatic stay provision, 11 U.S.C. § 362; and (4) common law claims of defamation. For the reasons that follow, defendants' motion to dismiss the second amended complaint is granted.

## I. BACKGROUND

The following facts are based on the factual allegations in Odom's second amended complaint, which for purposes of this motion are assumed to be true. In September 1989, Odom, an African–American female, enrolled as a student at Columbia as an economics major. She maintained a satisfactory grade point average for her first two years. In September 1991, Odom registered for classes for the fall 1991 semester. She also requested Columbia's financial aid office to process her spring and fall 1991 loan applications, which had been held in abeyance because of Odom's "default status" with the New Jersey Higher Education Authority. Odom's "default status" was allegedly "removed" during the summer of 1991. (Second Amended Complaint at § V, ¶ 3(a).)

After registering for classes, Odom completed her course requirements and final examinations. (Id. at ¶ 3(b).) At the end of the fall 1991 semester, in December 1991, Columbia canceled Odom's registration as a student and informed her that she would have to apply for readmission in order to continue her studies. Odom was also informed for the first time that a clerk in Columbia's bursar's office had filed a "complaint" against her, and her readmission was made contingent on the complaint's resolution. (Id. at ¶ 3(c).) Although Odom made several attempts to see the complaint or be informed of its nature, Columbia allegedly denied Odom access to that document and refused to let her challenge its contents. (Id. at ¶ 8(b).)

In addition, Odom alleges that she was sexually harassed during December 1991 by a department head at Columbia. (Id. at ¶ 3(e).) Odom claims that Columbia deprived her of an opportunity to file a formal complaint with Columbia against the harasser. When Odom and her mother attempted to pursue that course of action, one of Columbia's deans "refused to speak with them, slammed down the telephone during attempted conversations ..., and threatened [Odom] with the initiation of criminal charges and arrest ..." (Id.)

During that same month, Odom also allegedly made numerous written requests for copies of her official academic transcript. (Id. at ¶ 8(a).) Columbia denied these requests because Odom owed it money. In addition, according to the second amended complaint, Columbia refused to acknowledge one of its own receipts as proof that Odom had made payment on one of her loans. Although Odom attempted to prove her lack of indebtedness for tuition, Columbia refused to permit her to do so. (Id.)

Also, according to the complaint, Columbia accused Odom of breaking a window on campus and denied her a disciplinary hearing on the incident. Columbia then used this incident to ban Odom from campus. (Id. at ¶ 8(c).)

In August of 1992, Odom filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Her bankruptcy petition included a tuition debt to Columbia of $19,000. On February 24, 1993, Odom was released from all dischargeable debts and subsequently informed Columbia of her bankruptcy discharge. Nonetheless, Columbia allegedly continued to attempt to collect the debt from Odom and ultimately obtained a default judgment in New York state court against Odom for the tuition debt. (Id. at ¶ 13.)

Moreover, according to the second amended complaint, one of Columbia's deans wrote a letter to Odom, dated March 30, 1993, containing "several false, malicious and libelous statements" about a meeting between Odom and another dean and Odom's actions with regard to her fall 1991 registration. (Id. at ¶ 16.) The letter, which accused her of "disobeying" a dean and "fraudulently inducing" an advisor to sign her registration form, was allegedly forwarded to an unnamed third party and placed in Odom's student file. (Id.) One month later, an attorney employed by Columbia wrote Odom a letter dated April 27, 1993 that "wrongfully accused [her] of making threatening calls to [Columbia] employees" (Id. at ¶ 18) and sent

the letter to Columbia's ombudsman and various unnamed other individuals. (*Id.* at ¶ 19.) It was also placed in Odom's student file. (*Id.*)

In December of 1993, Odom brought this action *pro se,* but subsequently retained counsel. That counsel, on her behalf, then filed an amended complaint. She later retained new counsel who filed the second amended complaint, seeking declaratory, injunctive and compensatory relief against Columbia for deprivations of Odom's "constitutional" rights. (*Id.* at § I, ¶ 1.) In that complaint, Odom alleges that Columbia maintains a discriminatory system of financial aid that "routinely grants greater amounts of financial aid to Caucasian applicants," and discriminated against her "by canceling her registration for financial reasons while not imposing that sanction on Caucasian students." (*Id.*) Odom alleges causes of action pursuant to: (1) 42 U.S.C. § 1981 of the Civil Rights Act of 1866 for deprivations of "due process and equal terms and conditions as it relates to her status as a student at the university and the contractual rights and obligations relating to this status" (*id.* at § V, ¶ 2); (2) 20 U.S.C. § 1232g of FERPA for deprivations of "certain rights and protections as a student" (*id.* at ¶ 6); (3) 11 U.S.C. § 362 of the Bankruptcy Code for Columbia's refusal "to recognize a Court issued discharge of a tuition debt as granted in a federal bankruptcy proceeding" (*id.* at ¶ 12); and (4) common law defamation for the letters sent to her by Columbia (*id.* at ¶¶ 16–19).

Prior to filing the second amended complaint, Odom's counsel entered into a stipulation in which Columbia agreed to accept Odom's second amended complaint and Odom agreed to waive all rights to further amend the complaint. The stipulation was "so ordered" by the Court (Patterson, J.). Shortly thereafter, Columbia moved to dismiss the second amended complaint for failure to state a claim and the parties fully briefed the issues. On the same day that Odom's attorneys submitted a memorandum of law in opposition to Columbia's motion, accompanied by an affidavit of Odom herself, Odom wrote to the Court that she had never

consented to the stipulation signed by her attorney and that he had no authority to enter into that agreement. (Plaintiff's Letter to the Court dated Jan. 23, 1993.) Odom's attorney responded in a letter of the same date, writing that Odom expressly consented to the stipulation in order to reduce the costs of making a formal motion for leave to amend. (Letter of Charles M. Powell, Jr., Esq. to the Court dated Jan. 23, 1993.) Odom's attorneys subsequently withdrew from their representation of her.

On July 10, 1995, in response to a letter by Odom, the Court informed the parties that, because defendants' motion to dismiss had been "fully briefed and submitted," it would be decided. Odom was also directed to notify the Court and defendants' counsel if and when successor counsel was engaged.

## II. *THE LEGAL STANDARD IN DECIDING A MOTION TO DISMISS*

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the role of a district court is to assess the legal feasibility of the complaint, not to weigh the evidence which might be offered at trial. *Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990); *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). In doing so, the court may consider only "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). All factual allegations in the complaint must be accepted as true and the complaint must be viewed in the light most favorable to the plaintiff. *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). A motion to dismiss should not be granted " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994) (quoting *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

### III. *DISCUSSION*

#### A. *Section 1981*

■ Odom alleges that Columbia violated her "rights as guaranteed by 42 U.S.C. § 1981 [because she] was deprived of due process and equal terms and conditions as it relates to her status as a student at the university and the contractual rights and obligations relating to this status." (Second Amended Complaint at § V, ¶ 2.) More specifically, Odom claims that Columbia violated her rights by: (1) refusing to timely process her loan applications causing her to be personally liable for the loans and depriving her of access to Columbia by canceling her registration; (2) canceling her registration and banning her from campus under threat of arrest without giving her an explanation or hearing, although similarly situated white students were treated differently; (3) requiring her to apply for readmission and making readmission contingent on the outcome of a complaint filed by a Columbia employee without disclosing the contents of the complaint to her when others were treated differently; (4) maintaining a system of tuition policies and requirements and allocation of financial aid that discriminated against African-Americans; (5) refusing to permit her to file a sexual harassment complaint against an employee of Columbia because of her race; and (6) barring her from campus and denying her "a disciplinary hearing that was readily afforded and provided similarly situated whites." (*Id.* at ¶ 3(a-f).)

■ Section 1981 prohibits "certain racially motivated and purposely discriminatory acts." *Yusuf,* 35 F.3d at 714 (citing *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988) (en banc)). It applies "to private as well as state actors, including independent academic institutions." *Id.* (citations omitted). In order to state a claim under section 1981, a plaintiff must allege the following:

(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). "Essential to an action under section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert,* 851 F.2d at 571 (citations omitted). In order to survive a motion to dismiss a section 1981 claim, a "plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf,* 35 F.3d at 713 (citations omitted). It is not enough for a plaintiff to recite mere conclusory accusations. *Id.; Albert,* 851 F.2d at 572.

■ Odom's allegations are essentially that Columbia discriminated against her and treated her differently than Caucasian students because she is an African-American woman. In order "[t]o support a claim of selective enforcement [a plaintiff] must allege purposeful and systematic discrimination by specifying instances in which [she was] singled out for unlawful oppression in contrast to others similarly situated." *Albert,* 851 F.2d at 573 (internal quotations and ellipses omitted); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989) ("[Plaintiff's] obligation was to identify and relate specific instances where persons situated similarly 'in all aspects' were treated differently ...") (citations omitted).

■ Odom's second amended complaint contains nothing more than accusations of race-based discrimination and unequal treatment. Odom does not refer to a single situation in which a student, let alone a similarly situated student, was treated differently by Columbia. Odom does not allege any facts that support a conclusion that Columbia's conduct was the result of purposeful race-based discrimination. Even on a motion to dismiss, a court cannot accept "naked assertions" in a complaint that does not set

forth supporting allegations of facts. *Yusuf,* 35 F.3d at 713 (quoting *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978) (per curiam)). A mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must specifically allege the "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf,* 35 F.3d at 713 (citing *Dartmouth Review,* 889 F.2d at 17; *Albert,* 851 F.2d at 572–73). Because the second amended complaint fails to meet that standard, Odom's allegations are insufficient to state a claim based on section 1981.

Accordingly, Odom's first cause of action is dismissed.

### B. *Family Education Rights and Privacy Act*

█ Plaintiff's memorandum of law and affidavit in opposition to Columbia's motion to dismiss do not address defendants' contention that Odom has failed to state a FERPA claim. This claim, however, has not been withdrawn and its viability will be addressed briefly.

█ Plaintiff claims that Columbia violated FERPA by failing to provide her with her transcript and other records, and by refusing to provide her with a disciplinary hearing when she was accused of breaking a window. In doing so, Odom seeks to create a private cause of action under FERPA. *See* 20 U.S.C. § 1232g(f) ("The Secretary shall take appropriate actions to enforce this section and to deal with violations ...."). The United States Court of Appeals for the Second Circuit has stated unequivocally that "FERPA itself does not give rise to a private cause of action." *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 33 (2d Cir.1986) (citing *Girardier v. Webster College,* 563 F.2d 1267, 1276–77 (8th Cir.1977)). In *Fay,* however, the court held that "FERPA creates an interest that may be vindicated in a section 1983 action." *Id.* (citations omitted). In this case, Odom's second amended complaint does not allege a section 1983 violation. Furthermore, such claim, even if alleged, could not survive a motion to dismiss because Colum-

bia, as a private institution, does not act under color of state law. *See, e.g., N.C.A.A. v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

Accordingly, Odom's second cause of action is dismissed.

### C. *Automatic Stay Pursuant to the Bankruptcy Code*

█ Odom asserts that her tuition debt to Columbia was discharged in her bankruptcy proceeding and that Columbia's attempts to collect that debt violated 11 U.S.C. § 362 of the Bankruptcy Code. Section 362, which provides for an automatic stay of collection proceedings while the bankruptcy is pending, automatically terminates upon the debtor's discharge. *See* 11 U.S.C. § 362(c). Odom alleges that Columbia attempted to collect this debt after her discharge. Thus, on the facts alleged by Odom, the automatic stay was no longer in effect and there is no possibility of a section 362 violation.

█ Even if Odom were permitted to amend her complaint, it is clear that the relief that she is seeking would be unavailable. In her opposition to Columbia's motion to dismiss, plaintiff states that she is seeking a declaratory judgment that the default judgment entered by the New York Supreme Court is "invalid so as to prevent [Columbia] from attempting to collect on this debt by restraining her assets and from otherwise proceeding against her." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, pp. 12–14.) In support of this contention, Odom claims that the New York Supreme Court lacked jurisdiction over her because of improper service of process and because "she has a meritorious defense based on the fact that this debt was discharged in the Bankruptcy Court."

█ As a general matter, student loans are nondischargeable unless: (1) repayment on the loans began at least seven years before the bankruptcy filing; or (2) excepting the student loans from the discharge would "impose an undue hardship on the debtor

**196**

..." 11 U.S.C. § 523(a)(8). Odom clearly cannot qualify under the first exception because she was not even enrolled at Columbia seven years before her bankruptcy filing. Under the second exception, the standard for showing "undue hardship" is fairly rigorous. *See, e.g., Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987). Student loans that do not meet the time requirement of the seven-year exception are presumed to be nondischargeable and the debtor bears the burden of challenging that presumption. *Buford v. Higher Educ. Assistance Found.,* 85 B.R. 579, 582 (D.Kan.1988); *see also United States v. Davis,* 142 B.R. 293, 294–95 (S.D.Ind.1992) (based on the law existing prior to the adoption of the Bankruptcy Code); *In re Griffin,* 108 B.R. 717, 719–20 (Bkrtcy.W.D.Mo.1989). Thus, the creditor does not have an affirmative duty to seek a declaration that the loans are not dischargeable under the undue hardship exception in the bankruptcy court before seeking to collect such loans from the debtor after discharge. *Buford,* 85 B.R. at 582.

Odom's defenses, if any, should have been presented to the state court or the bankruptcy court. Essentially, plaintiff is now seeking federal review of the decision of the state court to enter a default judgment, which resulted because she apparently chose not to appear in that action. Federal district courts, however, lack jurisdiction to review such final decisions of state courts pursuant to what is known as the *Rooker–Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 & n. 16, 103 S.Ct. 1303, 1314 & n. 16, 75 L.Ed.2d 206 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court."); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see also Gentner v. Shulman,* 55 F.3d 87, 88 (2d Cir.1995). When the relief sought in federal court requires a finding that "the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state court judgment." *Pennzoil v. Texaco,* 481 U.S. 1, 25, 107 S.Ct. 1519,

1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

Plaintiff's proper recourse was to seek review in the applicable New York state courts. In sum, this Court would lack jurisdiction to provide Odom the relief she seeks even if she were able to amend her complaint in response to Columbia's motion to dismiss.

Accordingly, Odom's third cause of action is dismissed.

### D. *Defamation*

Odom's defamation claims are based on two letters that Columbia allegedly sent her and others, and placed in her student file. Odom alleges that the letters contained "false and defamatory" statements because they accused her of "disobeying" a dean of Columbia, "fraudulently inducing an advisor to sign her registration form" and "making threatening telephone calls." (Second Amended Complaint at § V, ¶¶ 16, 18.)

Defendants allege that the complaint fails to set forth the specific statements that are alleged to be defamatory, as required by CPLR 3016(a). That provision states that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint ..." Defendants are correct that New York decisional authority mandates dismissal when, as here, "the particular words complained of" are not set forth in the complaint. *See, e.g., Skelly v. Visiting Nurse Ass'n of the Capital Region Inc.,* 210 A.D.2d 683, 686, 619 N.Y.S.2d 879, 882 (3d Dep't 1994); *Kosson v. Algaze,* 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 229 (1st Dep't 1994), *aff'd,* 84 N.Y.2d 1019, 646 N.E.2d 1101, 622 N.Y.S.2d 674 (1995); *Monsanto v. Electronic Data Sys. Corp.,* 141 A.D.2d 514, 516, 529 N.Y.S.2d 512, 515 (2d Dep't 1988).

However, a defamation action brought in federal court is governed by Fed. R.Civ.P. 8, which requires averments to be "simple, concise, and direct," and not by such a state pleading requirement as CPLR 3016(a). *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986). Pursuant to Fed.R.Civ.P. 8, a complaint is not required to contain the defamatory statements *in haec verba* as long as it affords defendant "sufficient notice of

the communications complained of to enable him to defend himself." *Id.*

Regardless of the relevant pleading standard to be imposed, the Court's jurisdiction over plaintiff's defamation claims is based solely on supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). A federal district court may, in its discretion, decline to exercise supplemental jurisdiction over a plaintiff's state law claims "when the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3); *see also Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir.1993); *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). In considering whether to exercise supplemental jurisdiction, a court should balance the factors of judicial economy, convenience, fairness and comity. *DiLaura v. Power Authority,* 982 F.2d 73, 80 (2d Cir.1992) (citations omitted). These factors, however, will usually—as they do here—"point toward declining to exercise jurisdiction over the remaining state-law claims" when all the federal law claims are eliminated before trial. *Id.; see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Accordingly, this Court declines to exercise supplemental jurisdiction over Odom's fourth cause of action and that cause of action is dismissed.

## IV. CONCLUSION

As set forth earlier, the undisputed record shows that plaintiff, through her attorney, entered into a stipulation, so ordered by the Court, stating that she "forever waives all of her rights to amend or supplement the Second Amended Complaint ..." (Stipulation dated Oct. 31, 1994.) Although plaintiff claims that she was never informed of this agreement and did not consent to it, (Plaintiff's Letter to the Court dated Jan. 23, 1995) plaintiff is bound by the acts of her attorney, including the adoption of the stipulation. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *see also Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1975). Accordingly, Odom's second amended complaint is dismissed with prejudice.